**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| JAMES WELLS,<br>on behalf of Plaintiff and the class<br>members described herein, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| KAPITAL SOLUTIONS INC.;<br>TRAVIS JACOBS; and<br>JOHN DOES 1-20; | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**COMPLAINT – CLASS ACTION**

1.      Plaintiff, James Wells, brings this action to secure redress for usurious and illegal loans (such as <u>Exhibit A</u>) made to Indiana residents.

2.      Plaintiff seeks damages under the Indiana Uniform Consumer Credit Code (Count I), treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §1964 (Count II), and restitution (Count III).

**JURISDICTION AND VENUE**

3.      The Court has subject matter jurisdiction under 18 U.S.C. §1964 (RICO), 28 U.S.C. §1332(d) (Class Action Fairness Act), and 28 U.S.C. §1367 (supplemental jurisdiction).

4.      On information and belief, there are more than 100 class members and the amount in controversy, on a classwide basis, exceeds $5 million, exclusive of interest and costs.

5.      This Court has personal jurisdiction over Defendants because they:

a.      Knowingly participated in the making and collection of unlawful loans to Indiana residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*,

5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures,* 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b.    Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

6.    Venue is proper because acts to obtain and collect the loan impacted Plaintiff in Indiana.

7.    Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES AND OTHERS

8.    Plaintiff James Wells is a citizen of Indiana and a resident of Indianapolis.

9.    Defendant Kapital Solutions Inc. ("Kapital Solutions") is a corporation organized

under the laws of Canada with its principal place of business in Montreal, Quebec. Its principal

address is 510 Décarie Blvd., Montréal, Québec, H4L3K9, Canada. (Exhibit B)

10.     Kapital Solutions is an e-commerce software development company that entered

into agreements with the online lenders described herein to provide the technological, underwriting,

payment processing, and electronic funds transfer support necessary for the lenders to advertise,

issue, and collect the unlawful debts at issue in this litigation.  On information and belief, Kapital

Solutions received a share of the revenue from the loans issued in return for its services.

11.     Kapital Solutions seeks business from Internet lenders generally and purported tribal

Internet lenders in particular.  It is a member of the Online Lenders Alliance (Exhibit B) and seeks

business from purported Tribal lenders (Exhibit C).

12.     Defendant Travis Jacobs is a natural person and resident of Canada. He can be

served at 759 rue du Square-Victoria, Suite 200, Montreal, Quebec H2Y 2J7.

13.     On information and belief, Jacobs is one of the main participants behind the

creation, development, and implementation of the "First Nations Lenders' Authority" ("FNLA"),  1

Patton Road, P.O. Box 2012, Mohawk Territory of Kahnawake, Quebec, J0L 1B0, Canada, which he

represented to be a regulator chartered to operate the tribal lenders.

14.     Jacobs held himself out as Secretary of the FNLA.  (Exhibit D) He was also its

contact person.  (Exhibit E, p. 12)

15.     FNLA purported to authorize and regulate the making of high-interest loans via a

number of trade names and websites.  (Exhibit F)

16.     The trade names and websites ("listed websites") included:

   a.     Dash of Cash, www.dashofcash.com (Exhibit G)

   b.     Rapital Capital, www.rapitalcapital.com (Exhibit H);

   c.     Uncle Warbucks, www.unclewarbucks.com (Exhibit I);

   d.     Money Messiah, www.moneymessiah.com (Exhibit J);

   e.     Speedy Servicing.

17.     FNLA represented that it had partnerships with Kapital Solutions and Jacob's firm, Lazarus Legal.  (Exhibit E, p. 11) In fact, no tribal authority authorized the FNLA to act on its behalf. (Exhibit K)

18.     John Does 1-20 are other entities and individuals who are involved with the lending activities complained of.

## LENDING SCHEME

19.     Defendants made loans to residents of Indiana via the Internet. Funds were disbursed by means of ACH transfers to the borrowers' respective bank accounts in Indiana. Repayment was made via ACH transfers from the borrowers' respective bank accounts in Indiana.

20.     The interest rates on the loans were many times the maximum permitted in Indiana.

21.     To cover up and conceal the illegal lending activities, Defendants had one Carolyn Stalk register the trade names used to make the loans in the province of Quebec, Canada.  (Exhibit L)

22.     The websites and loan documents recited that each lender was a "Mohawk or First Nations entity" located within the Mohawk Community of Kahnawake, which is a federally recognized First Nations entity and enjoys sovereign immunity, under the auspices of the FNLA.

23.     This is not true.

24.     FNLA was created in order to further the Native American cover, by purporting to be a regulatory authority regulating the making of loans from Native American reservations in Quebec. In fact, it had no authority to do so. (Exhibit K)

25.     The FNLA allowed anyone to apply for certification, charging US (not Canadian) $20,000 per year for a lender to become a "General Member," US$7,500 per year to become an "Affiliate Member" (e.g., companies which "assist" licensed lenders), and US$5,000 for "approved vendors."

26.     The FNLA then granted licenses to each of the websites listed above, which licenses

were available via a link on each website so that any consumer accessing the website would believe the lender to be legitimately licensed by the Mohawks of Kahnawake.

27.    However, no such charter was ever recognized by the Council, or any other legitimate governing authority.

28.    Defendants' loan agreements contain a choice-of-law provision indicating the laws of the Mohawk govern. There is no such law.

29.    Under Canadian federal law, a loan with an interest rate greater than 35% per annum (from January 1, 2025) or 60% per annum (prior to January 1, 2025) is a criminal offense, with no exception for loans made by persons claiming affiliation with a First Nation. (Section 347 of the Criminal Code of Canada)

## PLAINTIFF'S TRANSACTION

30.    Plaintiff Wells obtained a $500 loan via www.rapitalcapital.com on July 22, 2025, at a disclosed annual percentage rate of 419%.  (Exhibit A)

31.    Plaintiff Wells made some of the payments to  Rapital Capital.  The loan is still outstanding.

32.    The loan was made for personal purposes and not for business purposes.

33.    The principal amounts were transferred to Plaintiff's bank account in Indiana via ACH.

34.    Repayments were to be made from Plaintiff's bank account in Indiana via ACH.

35.    Loans to Indiana  residents made in the same manner as the loan to Plaintiff are governed by the laws of the State of Indiana.

36.    Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United*

*States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

37.    The excessive interest charges imposed by Defendants were intentional.

## COUNT I – INDIANA UNIFORM CONSUMER CREDIT CODE

38.    Plaintiff incorporates paragraphs 1-37.

39.    This claim is against all Defendants.

40.    Because the loan made to Plaintiff violated the rate limits set by Indiana law, and the violation was intentional, Plaintiff and other borrowers are entitled to ten (10) times the amount of the excess charge.

## CLASS ALLEGATIONS

41.    Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

42.    The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made via the website https://explorecredit.com/ at more than 36% interest (all of its loans qualify) (c) on or after a date two years prior to the filing of this action.

43.    Plaintiff may alter the class definition to conform to developments in the case and discovery.

44.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

45.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

46.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

47.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

48.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.      Individual actions are not economically feasible.

    b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.      Statutory damages;

    ii.     Attorney's fees, expenses and costs; and

    iii.    Such other or further relief as is appropriate.

## COUNT II – RICO

49.     Plaintiff incorporates paragraphs 1-37.

50.     This claim is against Defendants Jacobs, Kapital Solutions, and John Does 1-20, who are the RICO "persons."

51.     All loans made via the listed websites to Indiana residents are (a) unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Indiana law, where (c) the usurious rate is at least twice the enforceable rate (36%).

52.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

53.     The listed websites are an enterprise affecting interstate commerce, in that they purport to be located in Canada and make loans to Indiana and other U.S. residents via the Internet.

54.     Defendants Kapital Solutions, Jacobs, and John Does 1-20, are associated with the enterprise.

55.     Defendants  Kapital Solutions, Jacobs, and John Does 1-20, conducted or participated in the conduct of the affairs of the enterprise  through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

56.    Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

57.    Plaintiff brings this claim on behalf of a class.

58.    The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made via one or more of the listed websites at more than 72% interest (all such loans qualify) (c) which loan was made on or after a date four years prior to the filing of suit.

59.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

60.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a.    Whether the loans at issue are "unlawful debts" as defined in RICO.

b.    Whether the listed websites are each an "enterprise."

c.    Whether Defendants are associated with the enterprises.

d.    Whether Defendants conducted or participated in the affairs of these enterprises through a pattern of making and collecting unlawful loans.

61.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

62.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

63.    A class action is superior for the fair and efficient adjudication of this matter, in that:

a.    Individual actions are not economically feasible.

b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

       i.        Treble damages;

       ii.       Attorney's fees, litigation expenses and costs of suit; and

       iii.      Such other or further relief as the Court deems proper.

## COUNT III – UNJUST ENRICHMENT

64.     Plaintiff incorporates paragraphs 1-37.

65.     This claim is against all Defendants.

66.     Defendants obtained money from Plaintiff and the class members through unjust means, and should in equity be required to disgorge such money.

## CLASS ALLEGATIONS

67.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

68.     The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made via one or more of the listed websites (c) at more than 36% interest (d) on or after a date six years prior to the filing of this action.

69.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

70.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

71.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

72.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained  counsel experienced in class actions and consumer credit litigation.

73.     Plaintiff's claims are typical of the claims of the class members. All are based on the

same factual and legal theories.

74.    A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible.

      b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.     Appropriate damages;

        ii.     Costs of suit; and

        iii.     Such other and further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Heather Kolbus
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Dedelman@edcombs.com
Jclark@edcombs.com
Hkolbus@edcombs.com
ahuzyk@edcombs.com

## **JURY DEMAND**

Plaintiff demands  trial by jury.

*/s/  Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

/s/ *Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, loan, sale or file associated with Plaintiff, and any loan, account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.


*/s/ Daniel A. Edelman*
Daniel A. Edelman


T:\42387\Pleading\Complaint_Pleading.wpd